LEO JOSEPH *vs.* ELIZABETH G. CRAIG.

MAY 27, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is an action of trespass on the case to recover for personal injuries and other damages resulting from the alleged negligent operation of defendant's automobile. After a jury in the superior court returned a verdict for the plaintiff in the sum of $1000, the defendant's motion for a new trial was granted by the trial justice. The case is before us upon the plaintiff's single exception to such ruling.

The declaration, in three counts, alleged in substance (1) That defendant's automobile was being operated at excessive speed; (2) that defendant failed to keep a reasonable and proper lookout; and (3) that defendant failed to maintain proper control of her automobile.

The accident happened on August 28, 1935, about 2:45 o'clock, p.m., on the Danielson Pike in the town of Foster. The weather was clear and the road was dry. Danielson Pike was described as a two-lane public highway running east and west and was substantially a straight road in the location of the accident. On each side of the cement or usually traveled portion of the road was a hard-surfaced or "macadam" shoulder, estimated as from 6 to 10 feet wide. The total width of the whole road was approximately 32 feet. On the north side of the road, and set back therefrom 30 or more feet, was located a gasoline station which we shall refer to, in keeping with the transcript, as the "gas station".

The plaintiff testified that he was driving his automobile, in an easterly direction from Connecticut toward Providence, on his right or southerly side of the cement part of Danielson Pike. His left wheels were near the center line of the road. When about 100 feet westerly from the gas sta-

tion, he began to cross the middle line of the highway and to drive diagonally across the northerly cement lane toward the gas station where he intended to refuel. He had slowed down from thirty-five to fifteen miles per hour and had given a hand signal of his intention to cross to his left or north side of the highway.

The plaintiff further testified several times that at such point, namely, 100 feet westerly from the gas station, he noticed the defendant's car, which was then one half mile away and coming toward him in the northerly lane of the cement part of the Danielson Pike. He also stated in cross-examination that defendant's car might have been eight or nine blocks or 1600 to 1800 feet away at that time. The plaintiff, without stopping or altering his speed of fifteen miles, continued to drive diagonally across the northerly cement lane toward the gas station for a distance of about 90 to 95 feet; and at the latter point he again noticed the defendant's car. It was then about 150 feet away, and appeared to be slowing down from the rate of forty or forty-five miles per hour, at which it had been coming previously.

The plaintiff, continuing his course, drove a very short distance toward the gas station when his right rear wheel was hit by the front of defendant's car. At the time of the collision the plaintiff's front bumper and possibly his front wheels were partly on the gas station grounds and the rear wheels were on "the beginning of the macadam toward the cement—where it is attached to the cement" part of the northerly lane of the highway.

The collision turned the plaintiff's car completely around and both cars came to a final stop on the grounds of the gas station. The plaintiff testified that he was "knocked unconscious momentarily" and when he "came to", he heard the defendant's daughter say: "Well I haven't seen your car coming and when I saw it coming, it was too late." All of the above evidence was given by the plaintiff and no other

witness appeared for his side of the case or corroborated his testimony on the question of liability.

On the other hand, there was testimony by the defendant and her daughter, who was driving, which showed substantially that the defendant's car was traveling westerly in its right or northerly lane of the cement part of the highway; that the plaintiff was driving easterly on his own right or southerly cement lane; that when he was about in front of the center of the gas station and about 20 or 30 feet away from the defendant's car, the plaintiff suddenly made a sharp left turn, without any warning, and drove immediately in front of the path of the defendant's car; that the defendant's driver started to turn to her left to "miss" the plaintiff's car but was forced by other eastbound traffic to remain in her own right cement lane of the highway.

The defendant and her daughter further testified that when the collision took place both of the rear wheels of plaintiff's car were actually on the cement in the northerly lane; and that the marks on the road showed that the defendant's brakes were applied for a distance of 9½ feet. The defendant's driver denied stating at any time that she had not seen the plaintiff's car, and stated she had seen it; and defendant testified that, when plaintiff "came to" after the accident, he said: "Lady, I don't know how this happened."

In addition to the defendant and her daughter, two disinterested eyewitnesses of the accident substantially corroborated the defendant's version of how the accident happened. One of these witnesses testified that "instead of turning into the gas station, if he was coming for gas, from the Connecticut side, he kept on going until he got just by the center of the gas station and then he made a short turn, as if he made up his mind all of a sudden to turn into the gas station."

The other of these witnesses testified also that the plaintiff, when he returned from the doctor's within two hours

after the accident, was unable to tell how the accident happened; and that, when it was explained to him by this witness, the plaintiff "said he never saw that car no more than if it come out of the sky." Both of these disinterested eyewitnesses testified substantially that the accident happened within a second or less from the time that the plaintiff began what appeared to them as a delayed and sharp left turn across the cement road in front of the defendant's car, at a time when the latter was only about 20 or 30 feet away and was traveling between 30 and 40 miles per hour; and that the rear of plaintiff's car was in the northerly cement lane when the collision took place.

Another witness, an investigator, testified that he interviewed the plaintiff on the following day and obtained a statement in which the plaintiff admitted that he "looked ahead of me but did not see anything coming toward me at the time and no reason why I should not turn to the left"; and again that "I cannot account for my failure to see this other car approaching in any other way than by the fact that this car came up on me so fast." This statement was signed by the plaintiff and was in evidence.

After the jury returned a verdict for the plaintiff, and after a hearing, the trial justice granted the defendant's motion for a new trial on the grounds that the verdict was against both the weight of the evidence and the law. The plaintiff has stressed the attitude and comments of the trial justice during the trial and in his charge; and also his action in summarily dismissing the jury from further service merely because they did not return a verdict for the defendant, as the trial justice believed they should have done. The plaintiff contends that these instances in the transcript show clearly that the trial justice had prejudged the entire case and that his ruling upon the motion for a new trial is not entitled to the weight ordinarily accorded to such a decision.

In view of the nature of these contentions, which are wholly justified by the transcript, we have examined the

evidence independently of the trial justice's ruling or rescript. Upon such consideration, however, we have come to the conclusion that the verdict does not respond to the true merits of the controversy and that substantial justice between the parties requires that the case be tried to another jury. A fair and impartial consideration of the evidence, particularly the plaintiff's own evidence and that of the disinterested eyewitnesses, convinces us that the verdict was against the great weight of the evidence.

For the reasons stated, the exception of the plaintiff is overruled, and the case is remitted to the superior court for a new trial.

*Max Winograd, William J. Carlos,* for plaintiff.

*Hinckley, Allen, Tillinghast & Wheeler, Harold A. Andrews,* for defendant.